# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **NINETTE JEAN STRUTZ**, | Case No. 3:14-cv-00807-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CAROLYN W. COLVIN,** Commissioner of Social Security, | |
| Defendant. | |

Tim Wilborn, Wilborn Law Office, P.C., P.O. Box 370578, Las Vegas, NV 89127. Of Attorneys for Plaintiff.

Billy J. Williams, Interim United States Attorney, and Adrian L. Brown, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902; John C. Lamont, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-2240. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Ninette J. Strutz seeks judicial review of the final decision of the Commissioner of the

Social Security Administration ("Commissioner") denying her application for Disability

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Because the

Commissioner's decision is not supported by substantial evidence, the decision is REVERSED and REMANDED for further proceedings consistent with this Opinion and Order.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th. Cir. 1989). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (quotation marks omitted)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and the Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). However, a reviewing court may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1225-26 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

# BACKGROUND

## A.  Plaintiff's Application

Ms. Strutz filed applications for DIB and SSI on February 19, 2003, alleging disability as of July 18, 2000. AR 273-74, 280-83. Born in May, 1974, Ms. Strutz was 26 years old on the alleged disability onset date and 38 at the time of the most recent hearing. AR 77, 304. She speaks English, has a high school diploma, and attended two years of college. AR 51, 80, 316. She alleges disability due to: fibromyalgia, migraines, compressed vertebrae, lupus, vertigo, tremors, irritable bowel syndrome, incontinence, endometriosis, cognitive disorder, and memory loss. AR 309. The Commissioner denied her application initially and upon reconsideration, and she requested a hearing before an Administrative Law Judge ("ALJ"). AR 142, 147, 153, 157, 160. After an administrative hearing held on May 7, 2010, the ALJ found Ms. Strutz not disabled in a decision dated May 12, 2010. AR 117-128. The Appeals Council accepted review of the matter, and remanded the case for further proceedings. AR 136-39.

Following a second hearing held on August 12, 2012, the ALJ found Ms. Strutz not disabled in a decision dated September 7, 2012.  AR 52, 77-98. The Appeals Council denied Ms. Strutz's subsequent request for review on March 13, 2014. AR 1. The ALJ's decision thus became the final decision of the Commissioner, and Ms. Strutz sought review in this Court

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R.
      §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
      significant mental or physical duties done or intended to be done for pay
      or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
      such work, she is not disabled within the meaning of the Act. 20 C.F.R.
      §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
      substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's
      regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
      impairment or combination of impairments is "severe" if it significantly
      limits the claimant's physical or mental ability to do basic work activities.
      20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death,
      this impairment must have lasted or be expected to last for a continuous
      period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the
      claimant does not have a severe impairment, the analysis ends. 20 C.F.R.
      §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe
      impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the
      impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
      then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii),
      416.920(a)(4)(iii). If the impairment does not meet or equal one or more of
      the listed impairments, the analysis continues. At that point, the ALJ must
      evaluate medical and other relevant evidence to assess and determine the
      claimant's "residual functional capacity" ("RFC"). This is an assessment
      of work-related activities that the claimant may still perform on a regular
      and continuing basis, despite any limitations imposed by his or her
      impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e),
      416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis
      proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC
      assessment? If so, then the claimant is not disabled. 20 C.F.R.
      §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform
      his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ performed the sequential analysis. AR 40-52. At step one, the ALJ found Ms. Strutz had not engaged in substantial gainful activity since July 18, 2000, the alleged onset date. AR 40. At step two, the ALJ concluded that Ms. Strutz had the severe impairments of fibromyalgia, cognitive disorder, anxiety disorder, post partial tendon laceration right wrist, and systemic lupus erythematosus. Id. At step three, the ALJ determined that Ms. Strutz did not have an impairment or combination of impairments that met or equaled a listed impairment. AR 41.

The ALJ next assessed Ms. Strutz's RFC and found that she could perform light work, except that she cannot climb ladders, ropes or scaffolds; however, she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; can frequently handle and finger with her dominant right hand, and can only tolerate superficial interaction with others, without "close cooperation or coordination." AR 42. At step four, the ALJ found that Ms. Strutz had no past relevant work. AR 50. At step five, based on the testimony of a vocational expert ("VE"), the ALJ concluded that Ms. Strutz could perform jobs that exist in significant numbers in the national economy including small products assembler, laundry folder, and office helper. AR 51-52. Accordingly, the ALJ found Ms. Strutz not disabled. AR 52

## DISCUSSION

Ms. Strutz argues that the ALJ erred by (A) improperly discrediting her testimony; (B) improperly discrediting the opinions of her treating physicians; (C) improperly discrediting lay witness testimony; (D) failing to follow the regulations regarding mental impairments; and (E) failing to ask the appropriate hypothetical questions to the VE.

**A.  Plaintiff's Credibility**

There is a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1997 (9th Cir. 2004).

Here, the ALJ found that because Ms. Strutz's "subjective complaints and alleged limitations are not fully persuasive or consistent with her work history and the medical evidence," she was not "fully credible." AR 47. Ms. Strutz contends that the ALJ failed to provide clear and convincing reasons for discrediting her testimony.

### 1. Activities of Daily Living

The ALJ found that Ms. Strutz's activities of daily living ("ADLs") were inconsistent with her testimony regarding functional limitations. For example, Ms. Strutz testified that she spent five days per week, 20 hours per day in bed, and only gets up "if I need to go do something, take my daughter somewhere." AR 87, *see also* 371. She indicated she spent so much time in bed over many years because of chronic fatigue, pain, and migraine headaches. AR 87-88. However, the ALJ noted contrary evidence in the record, including the facts that Ms. Strutz drives her daughter to and from school and other locations; attends counseling, bible study, and church; and volunteers in her daughter's classroom. *Id.*, 372, 2193. He further noted Ms. Strutz is able to drive or otherwise travel independently, care for a pet dog, shop for groceries with her mother or daughter, attend medical appointments, and perform light household work. *Id.*; AR 372, 373, 950, 1304. Also, Ms. Strutz indicated she can play cards, watch movies, and talk on the phone regularly. AR 47, 375. Additionally, the ALJ noted Ms. Strutz went to a restaurant and bar

in 2009, and raced go-carts in 2002. AR 46, 47, 564, 1322, 2193. The ALJ found these activities inconsistent with Ms. Strutz's allegations of being essentially bed-bound. AR 47.

Ms. Strutz contends the ALJ misinterpreted the activities listed above, arguing that she cannot perform the listed activities to the extent the ALJ described, and that her ability to engage in these activities does not equate to the ability to perform full-time work. Ms. Strutz's arguments are unpersuasive. There are two grounds for using daily activities to form the basis of an adverse credibility rating. The first is when the activities contradict prior testimony. The second is when the activities meet a threshold for transferable work skills. *Orn*, 495 F.3d at 629. Here, the ALJ explained that the ADLs conflicted with Ms. Strutz's testimony that she was bedridden most of the time and unable to carry out normal activities due to her impairments, not that the ADLs meant she could perform regular work. AR 47.

Ms. Strutz also argues that she does not attend church as often as she indicated in her application, citing testimony from lay witness Sandi Swanson. AR 372, 375, 424. In 2006, Ms. Swanson submitted a letter asserting that Ms. Strutz attended church approximately once am month and attended Bible study approximately once a month. Ms. Strutz, however, subsequently reported to a treatment provider that Ms. Strutz went to church twice per week. AR 455. It is not within the purview of the reviewing court to "reverse credibility determinations of an ALJ based on contradictory or ambiguous evidence." *Johnson v. Shalala*, 60F.3d 1428, 1434 (9th Cir. 1995). The ALJ's finding that Ms. Strutz is able regularly to drive her daughter to and from school or to friends' houses, perform volunteer work, and grocery shop is supported in the record. AR 335, 338, 371-72, 2193. Even when the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's findings if, as here, those findings are supported by inferences reasonably drawn from the record. *Molina v. Astrue*, 674 F.3d 1104,

1111 (9th Cir 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

Accordingly, the ALJ properly assessed Ms. Strutz's ADLs pursuant to *Smolen* and SSR 96-7p.

### 2. Working After the Alleged Disability Onset Date

Ms. Strutz argues that the ALJ erred in considering that she worked after the alleged disability onset date. A claimant's ability to work after the alleged date of disability may support an adverse credibility finding. *See Greger v. Barnhart*, 446 F.3d 968, 972 (9th Cir. 2006). The ALJ noted Ms. Strutz worked in a restaurant in 2001, and then at a new job in 2002. AR 46, 546, 592. While the Court acknowledges Ms. Strutz's contention that she was not working full time, the fact that she was employed at all contradicts her allegation of near complete inability to function. Further, it appears that Ms. Strutz stopped working in 2002 because she was laid off, not because she was unable to work due to her impairments. AR 543. A claimant's reason for leaving employment is a valid rationale in weighing credibility. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir, 2001). Thus, the ALJ's finding that Ms. Strutz's attempts at work "evidences a higher level of functioning than what she has alleged" is a clear and convincing reason, supported by substantial evidence, to discount her allegations. AR 46-47.

### 3. Failure to Follow Recommended Treatment

The ALJ also explained that Ms. Strutz was not fully compliant with her treating physicians over the years. AR 47. An unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment is a relevant factor in determining the credibility of a claimant's pain symptoms. *Orn*, 495 F.3d at 636 (citations omitted). The ALJ explained that according to a 2003 chart note, Ms. Strutz was taking her pain medication sparingly. AR 47. Ms. Strutz contends that she "followed the treatment plan recommended by her doctors, and to the extent increasing her dosage of Methadone may have made her physical pain better," it would not have necessarily allowed her to sustain regular work. Def.'s Reply 5.

Again, Ms. Strutz's argument is misplaced. Taking less than the full dose of a pain medication is circumstantial evidence that her pain may not have been as severely disabling as she alleges, and not that the she can necessarily perform regular work. *See Burch*, 400 F3d. at 681 ("That Burch's pain was not severe enough to motivate her to seek [extensive] treatment . . . [was] powerful evidence regarding the extent to which she was in pain.") (internal citation and quotation marks omitted). Further, substantial evidence supports the conclusion that on several occasions, Ms. Strutz was not feeling the need to take her full dosage, and otherwise reported that her Methadone was effective in treating her chronic pain. AR 464, 976, 979, 1319, 1877, 2198. The ALJ's interpretation of the evidence of methadone usage and efficacy was reasonable, and is therefore upheld.

### 4. Smoking

The Court finds that the ALJ's reasoning regarding Ms. Strutz's smoking is not a clear and convincing reason to discount Ms. Strutz's pain testimony. As Ms. Strutz argues, her failure to follow her doctor's directions to stop smoking was very likely the result of nicotine addiction. Thus, her inability to stop smoking is not persuasive evidence that Ms. Strutz simply ignores directions from physicians. *See Jones v. Colvin*, *available at* 2014 WL 3579523 (D.Or. July 18, 2014) ("Jones provided numerous explanations regarding her failure to quit smoking . . . the fact that [she] failed to stop smoking is not a clear and convincing reason for discrediting her symptom testimony."); *see also Smolen*, 80 F.3d at 1284 ("Where a claimant provides evidence of a good reason for not taking medication for her symptoms, her symptom testimony cannot be rejected for not doing so.").

Nonetheless, because the ALJ provided at least one valid reason to discount Ms. Strutz's testimony, his ultimate credibility finding must be upheld. *Carmickle v. Commissioner, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

PAGE 11 – OPINION AND ORDER

**B.  Medical Opinion Evidence**

Ms. Strutz argues that the ALJ improperly discounted the medical opinion evidence of Drs. Webb, Tongue, Horn, and M.A. Adams. The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).

If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating doctor's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Additionally, the ALJ must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Lester*, 81 F.3d at 830. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester*, 81 F.3d at 830. Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, or inconsistency with a claimant's ADLs. *Tommasetti*, 533 F.3d at 1040. It is error to ignore an examining physician's medical opinion without providing reasons for doing so; an ALJ effectively rejects an opinion when he ignores it. *Smolen*, 80 F.3d at 1286.

### 1.  Dr. Webb

James Webb, D.O. was Ms. Strutz's primary physician before the alleged onset date of July 18, 2000 through at least 2011. AR 273-74, 636. Dr. Webb opined on May 29, 2009 that Ms. Strutz was "unable to participate in a work program due to chronic pain from vertebral compression fracture and fibromyalgia. She is in all likely hood [sic] disabled and unemployable." AR 1585. The ALJ accorded the opinion "little weight" because it was not consistent with the record as a whole, commented on an issue reserved for the Commissioner, and did not provide specific functional limitations. AR 49. Although Ms. Strutz concedes that "Dr. Webb's bare statement may not have explained what [her] specific functional limitations are," she contends his statement is nonetheless supported by his "voluminous treatment records." She further argues the ALJ was obligated to contact Dr. Webb if he was unable to determine a basis for the doctor's opinion in record. *Id.* at 11-12; *see also* SSR 96-5p, *available at* 1996 WL 375183, *6.  The Commissioner contends that the ALJ adequately considered Dr. Webb's treatment notes and provided valid reasons for discounting his opinion.

As a threshold matter, Dr. Webb's opinion is squarely contradicted by an examining physician, Kim Webster, M.D., who found no evidence of major physical limitations, and to a lesser degree by non-examining physician Mary Ann Westfall, M.D., who opined that Ms. Strutz could perform light work with some limitations. AR 759, 1288-91. Accordingly, specific and legitimate reasons are sufficient to discount Dr. Webb's opinion. Here, the ALJ provided a number of reasons to discount his opinion, including: (1) it was inconsistent with the record a whole, (2) it was on an issue reserved for the Commissioner, and (3) it did not provide functional limitations or explain why Ms. Strutz's pain precluded all full-time work. AR 49.

The first reason is not sufficiently specific—the ALJ did not identify with specificity any examples of inconsistency with the record as a whole, despite the hundreds of pages of chart

notes authored by Dr. Webb.  The second reason, however, is legitimate: "[a]lthough a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with the respect to . . . the ultimate determination of disability." *McLeod v. Astrue*, 640 F.3d 881, 884-85 (9th Cir. 2010). The ALJ was also within his purview to discount the opinion because it lacked specificity regarding Ms. Strutz's functional limitations. Although Ms. Strutz maintains that Dr. Webb's notes explain functional limitations in great detail, she does not direct the Court to any specific functional limitations, but instead generally cites to nearly 900 pages of medical records. Further, the Court's review of the records identified by Ms. Strutz does not reveal clear evidence of permanent functional limitations. *See, e.g.*, AR 523 ("Much less muscle tightness and increased range of motion. Large trigger point in trapezius region. It is almost fully resolved. Probably only about 10% remaining."), 532 ("Not having much in the way of low back pain."), 736 (Despite diagnosis of fibromyalgia, Dr. Bonafede indicates "[Ms. Strutz] says she is 90% better on the methadone . . . this enables her to function significantly better."), 960 ("[Ms. Strutz] has continued to respond well to manual work, average pain continues to very slowly decrease and overall functional level continues to very slowly increase."), 1464 ("OMT [osteopathic manipulative treatment] with muscle energy to cervical thoracic, and lumbar spine. [Ms. Strutz] tolerated this well, with good tissue response. Will have her continue with physical therapy and follow up with me in a month. Will have her off work for 1 more month."). The ALJ's finding that Dr. Webb did not identify functional limitations or explain why Ms. Strutz was precluded from full-time work is confirmed by the record; moreover, the finding is a reasonable interpretation of the evidence. Thus, the ALJ did not err. *See Batson*, 359 F.3d at 1193 (holding that  "the Commissioner's findings are [to be] upheld if supported by

inferences reasonably drawn from the record and if evidence exists to support more than one

rational interpretation, we must defer to the Commissioner's decision") (citations omitted).

Ms. Strutz further argues that the ALJ was compelled to contact Dr. Webb and request

additional information if he was unable to determine the basis of the doctor's opinion. In support,

Ms. Strutz cites SSR 96-5p, which states:

> Because treating source evidence (including opinion evidence) is
> important, if the evidence does not support a treating source's
> opinion on any issues reserved to the Commissioner and the
> adjudicator cannot ascertain the basis of the opinion from the case
> record, the adjudicator must make "every reasonable effort" to
> recontact the source for clarification of the reasons for the opinion.

SSR 96-5p, *available at* 1996 WL 374183, *6. The Ninth Circuit, however, has held that

"[r]ejection of the treating physician's opinion on ability to perform any remunerative work does

not by itself trigger a duty to contact the physician for more explanation." *McLeod*, 640 F.3d at

885. *McLeod* explained that such a duty is appropriate only when there is "ambiguous evidence,

or the ALJ's own finding that the record is inadequate . . . [or] when the claimant is

unrepresented or has only a lay representative." *Id.* (quoting *Tonapetyan v. Halter*, 242 F.3d

1144, 1150 (9th Cir. 2001) (internal quotation marks omitted)). Thus, because the ALJ did not

find the evidence ambiguous or inadequate, and because Ms. Strutz was at all times represented

by counsel, the ALJ was not required to contact Dr. Webb.

**2.  Dr. Adams**

Ms. Strutz also contends the ALJ erroneously disregarded the opinion of Wayne Adams,

Ph.D., who co-signed a report with Debra Horne, M.A., after a neuropsychological examination

in July, 2005. AR 48. Ms. Horne conducted a clinical interview and administered psychological

tests. AR 2189. The physicians opined that Ms. Strutz "may have mild neuropsychological

impairment at the short term or working memory level . . . [including] possibilities of impairment

in the areas of short-term auditory memory, logical memory, digit and letter sequencing, and attention and concentration." AR 2196. They further noted Ms. Strutz's "academic skills were average to low average in nature but would be adequate for entry level or simple paid or volunteer work." *Id.* The physicians concluded that "[t]he prognosis for Ms. Strutz to be able to complete full time employment is poor . . . [p]rognosis for part time work is poor to fair depending on the type of work and number of hours . . . not to exceed 5 hours per week." AR 2197.

The ALJ indicated that he accorded the opinion "some weight" because it was "generally consistent with the evidence of record . . . [t]he record as a whole, however, does not indicate [Ms. Strutz] is limited to only part-time work." AR 48. The ALJ noted that "Dr. Adams recommended the claimant use Methadone daily so that she feels better and can do more activities and enjoy the day more . . . Dr. Adams seems to rely heavily on subjective complaints in forming his opinion." *Id.* When an ALJ finds a claimant not fully credible, a physician's reliance on the claimant's self-reporting is a valid reason to discount his testimony. *Fair*, 885 F.2d at 605. Ms. Strutz argues that Dr. Adams did not rely on her subjective complaints in rendering his opinion, but rather relied on a battery of psychological tests. Dr. Adams, however, indicated that Ms. Strutz's inability to perform full-time work was due to her many diagnoses and associated chronic pain and fatigue, including a litany of physical conditions outside the scope of the psychological testing. AR 2197. Because the ALJ determined that Ms. Strutz's subjective complaints were not fully credible, it was appropriate for the ALJ to discount Dr. Adams' and Ms. Horne's conclusion that Ms. Strutz was unable to work due to "medical conditions, chronic pain, and chronic fatigue." *Id.* The finding was specific and legitimate, and therefore will be upheld.

### 3. Dr. Tongue

Dr. Tongue performed a psychodiagnostic examination of Ms. Strutz in February 2007. AR 760-64. Dr. Tongue administered the "Repeatable Battery for the Assessment of Neuropsychological Status ("RBANS")," which demonstrated "significant cognitive impairment," including first percentile scores in language, attention, and delayed memory. AR 762-63. Dr. Tongue opined that Ms. Strutz's cognitive functioning appeared to be "compromised to the degree that it was unlikely that she would be able to function in employment." AR 763.

The ALJ accorded Dr. Tongue's opinion "little weight," noting that it conflicted with the doctor's own observations and the medical evidence. AR 48. The ALJ explained that Dr. Tongue's opinion was wholly based on a single test that did not involve a control to assess effort of malingering. *See id.* The ALJ further noted that Dr. Tongue suggested more extensive testing to establish the extent and degree of Ms. Strutz's cognitive deficits. *Id.*; AR 763. Finally, the ALJ stated that despite Ms. Strutz's extremely low scores regarding cognition and memory, she was nevertheless able to read, play card games, and watch videos. *Id.* Ms. Strutz contends that although Dr. Tongue did not conduct testing to measure effort or malingering, any question about the validity of the test results are satisfied because Dr. Adams conducted such testing during his examination (although it was actually Ms. Horne who examined Ms. Strutz), and felt she gave full effort. Ms. Strutz's argument is unpersuasive, however, because the tests were administered nearly two years apart; further, that Ms. Strutz may have provided full effort on one test in 2005 is no guarantee that she always provides full effort. *See* AR 760, 2189. Moreover, the validated testing in 2005 found only mild neuropsychological impairments, whereas Dr. Tongue's 2007 non-validated results suggested very extreme impairments. AR 762-63, 2196. The inconsistency between the two psychological tests, coupled with Ms. Strutz's self-described ability to read, play card games, and travel independently, reasonably support the ALJ's finding

PAGE 17 – OPINION AND ORDER

that Ms. Strutz is not as limited as opined by Dr. Tongue. AR 48, 375. Accordingly, the ALJ did

not err in giving the opinion little weight.

In sum, the ALJ did not err in assessing the medical opinion evidence

## C.  Lay Witness Testimony

Ms. Strutz argues that the ALJ improperly rejected the testimony of her mother, Nancy

Martinez; her daughter, Paige Shlagle; and acquaintance Sandi Swanson. Both Ms. Martinez and

Ms. Shlagle testified at Ms. Strutz's May 2010 hearing. AR 2751-55. Additionally, Ms. Martinez

submitted two questionnaires describing Ms. Strutz's limitations, noting she has difficulty

concentrating for more than two to five minutes and has problems with many exertional

activities. AR 318-26, 359-68. Ms. Shlagle testified that Ms. Strutz is often bedridden due to

pain, and once vomited so forcefully that she broke blood vessels in her eye. AR 50.

Ms. Swanson submitted a letter indicating she observed Ms. Strutz exhibit pain behavior during

church, that she could not sit comfortably through a church service, and did not have regular

attendance at church services or Bible study. AR 424.

Lay testimony regarding a claimant's symptoms or how an impairment affects claimant's

ability to work is competent evidence that an ALJ must take into account. *Nguyen v. Chater*, 100

F.3d 1462, 1467 (9th Cir. 1996) (citations omitted). The ALJ must provide "reasons germane to

each witness" in order to reject such testimony. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)

(citations omitted).  The ALJ indicated that "[b]ecause she has a personal relationship with the

claimant and lacks the expertise and possibly motivation to offer an objective or functional

assessment," Ms. Martinez's statements were "considered with caution." AR 50. The Ninth

Circuit has repeatedly held the sole fact that a lay witness is a close family member is not a

germane reason to discredit their testimony, because virtually every lay witness has a personal

relationship with a claimant. *Dodrill*, 12 F.3d at 918-19. The ALJ, however, also noted

Ms. Martinez's testimony and statements that Ms. Strutz can maintain focus for only two to five minutes is inconsistent with her other statements that she can read, watch videos, play card games, and drive. AR 50, 318-26, 361-68. Inconsistent testimony is a germane reason to discount a lay witness's testimony. *See Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (internal contradiction is an acceptable rationale to find a testimony not credible); *see also Lockwood v. Comm'r, Soc. Sec. Admin.*, 397 Fed.Appx. 288, 291 (9th Cir 2010) (ALJ's failure to consider lay witness who offered internally inconsistent testimony regarding claimant's daily activities was harmless because it would not have altered the RFC determination). Thus, the ALJ provided a germane reason for discounting Ms. Martinez's testimony.

The ALJ found Ms. Shlagle's testimony warranted only limited weight because it did not "provide guidance regarding the effect of the claimant's impairments or her ability to function." AR 50. The Commissioner concedes that the ALJ's reason was inadequate. However, "where the ALJ rejects a witness's testimony without providing germane reasons, but has already provided germane reasons for rejecting similar testimony, [the Court] cannot reverse the agency merely because the ALJ did not clearly link his determination to those reasons." *Molina*, 674 at 1121 (citation and internal quotation marks omitted). Accordingly, because the ALJ had previously provided germane reasons for rejecting Ms. Strutz's testimony regarding the severity of her pain and her assertion that she must spend 20 hours per day in bed, any errors in assessing Ms. Shlagle's testimony were harmless.

The ALJ indicated he accorded the 2006 written testimony of Ms. Swanson some weight, because it was "generally consistent with the evidence of reduced functioning caused by physical impairment." AR 50. The ALJ found Ms. Swanson's testimony to show that Ms. Strutz conditions "wax and wane, resulting in varying degrees of functional limitation." Specifically,

the ALJ noted that Ms. Swanson testified that Ms. Strutz attends Bible study "weekly." *Id.*
Ms. Swanson's letter, however, states that Ms. Strutz attends church only once or twice every
two months, attends Bible study an average of once or twice in ten weeks, and regularly exhibits
pain behavior on the few days she can attend church. AR 424. The ALJ did not accurately
summarize Ms. Swanson's testimony and the ALJ's conclusions regarding the import of
Ms. Swantson's testimony is not supported by substantial evidence in the record. Further, the
ALJ indicated that Ms. Strutz has mental limitations that Ms. Swanson did not mention, which
presumably means Ms. Strutz is *more* limited than Ms. Swanson suggests. AR 50. Accordingly,
it is unclear why the ALJ accorded Ms. Swanson's testimony less than full weight. Unlike the
testimonies of Ms. Martinez and Ms. Shlagle, the ALJ did not "already provide[] germane
reasons for rejecting similar testimony" to that provided by Ms. Swanson regarding Ms. Strutz's
limited church attendance and observable pain behavior. *See Molina*, 674 F.3d at 1121.
Accordingly, the *Molina* "rule" does not apply. Thus, the ALJ has not provided a germane reason
for discounting Ms. Swanson's testimony. On remand, the ALJ must reassess the letter and
provide a germane reason for discrediting Ms. Swanson's testimony, if applicable

## D. RFC Formulation and Hypothetical Questions for VE

Ms. Strutz contends the ALJ erred in fashioning her RFC because he did not include
moderate limitations in concentration, persistence, or pace. 16. The Commissioner maintains that
the ALJ appropriately omitted the limitations, and offers a number of arguments. For the
following reasons, the Court agrees with Ms. Strutz.

Mental impairments are evaluated at steps two and three of the five-step sequential
evaluation process using the special psychiatric review technique. 20 C.F.R. §§ 404.1520a(a),
416.920a(a). Using that technique, the ALJ first rates the degree of functional limitation resulting
from a claimant's impairments, then determines the severity of those impairments. 20 C.F.R.

§§ 404.1520a(b), 416.920a(b). Functional limitations are determined by assessing the functional areas of: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c), 416.920a(c). After the functional limitations are determined, the ALJ determines if the severity of the impairment meets or equals a listed impairment. 20 C.F.R. §§ 404.1520a(d), 416.920a(d). If the impairment does not meet or equal a listing, the ALJ must then assess the claimant's mental RFC. 20 C.F.R. §§ 404.1520a(e), 416.920a(e). At step two, the ALJ found Ms. Strutz had the severe mental impairments of cognitive disorder and anxiety disorder. AR 40. The ALJ then determined that Ms. Strutz's mental impairments did not meet or equal listing 12.06 of 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 41. The ALJ also concluded that Ms. Strutz had "moderate difficulties" in concentration, persistence, or pace. AR 42.

The Commissioner argues that although the ALJ found Ms. Strutz to have moderate limitation in concentration, persistence, or pace, the ALJ was not obligated to include that finding in Ms. Strutz's RFC. The Commissioner suggests that finding only pertains to steps two and three of the sequential evaluation process. In support, the Commissioner cites a passage from SSR 96-8p that states "the adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3." SSR 96-8p, *available at* 1996 WL 374184 at *4 (July 2, 1996). The remainder of the passage states "[t]he mental residual functional capacity assessment used at steps 4 and 5 . . . requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 . . . ." *Id.*

The Commissioner argues that even though the ALJ found moderate limitation in concentration, persistence, or pace at steps 2 and 3, he thereafter abandoned the finding at step 4, following the "more detailed assessment" mentioned above. Essentially, the Commissioner argues that insofar as the ALJ's initial finding of moderate limitations in persistence, concentration, or pace was based on Ms. Strutz's subjective reporting of her "short attention span and difficulty following directions," it was proper for the ALJ to disregard the limitations because she was found not credible. Thus, argues the Commissioner, it was proper for the ALJ to disregard his prior finding in formulating the RFC. The ALJ, however, did not so conclude. The ALJ did not provide any explanation for why he did not incorporate limitations in the RFC relating to Ms. Strutz's "moderate" limitations in concentration, persistence, and pace that the ALJ had found. "Long-standing principles of administrative law require [courts] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009). Thus, the Court declines to presume what the ALJ may have been thinking as to why he failed to include any limitations relating to Ms. Strutz's moderate limitations in concentration, persistence, and pace.

The Commissioner also argues that the finding that Ms. Strutz is moderately impaired in concentration, persistence, or pace for the purposes of step 2 and step 3 is ambiguous, and therefore not appropriate to include in the RFC, or in questions to the VE. The Commissioner adds that the ALJ failed to identify whether Ms. Strutz was moderately limited in concentration, persistence *and* pace, or merely limited in one, two, or all three of the functional categories. This argument is not persuasive. The Commissioner identifies no statute or case authority that

supports the requirement that an ALJ must parse "concentration, persistence, or pace" into its

component parts and determine separate limitations for each.

Finally, the Commissioner argues that this case is analogous to *Stubbs-Danielson v.*

*Astrue*, 539 F.3d 1169 (9th Cir. 2008). In *Stubbs-Danielson*, the claimant's physician found she

had "slow pace, both in thinking & actions," but concluded she was nonetheless able to "carry-

out simple tasks as evidenced by her ability to do housework, shopping, work on hobbies,

cooking and reading." *Id.* at 1173. The ALJ then incorporated the limitations into a restriction of

"simple tasks." *Id.* at 1174. On appeal, the claimant argued that the limitations in the RFC did

not fully incorporate the claimant's limitations in pace as shown in the medical evidence. The

Ninth Circuit found that the ALJ's RFC did adequately incorporate the claimant's restrictions

regarding concentration, persistence, or pace. *Id.* The Commissioner argues here that *Stubbs-*

*Danielson* established that so long as the RFC assessment is "consistent with the restrictions

identified in the medical testimony," it is adequate. The Commissioner reasons that because

Ms. Strutz's moderate limitation was based on her non-credible testimony rather than medical

testimony, it was adequate for the RFC to include only a restriction regarding Ms. Strutz's

interaction with the public.

*Stubbs-Danielson*, however, is distinguishable from this case. As noted above, the ALJ

did not expressly discount his step three finding that Ms. Strutz suffered from "moderate"

deficits in concentration, persistence, and pace. The ALJ simply ignored that finding when

assessing Ms. Strutz's RFC. When an ALJ makes a finding in step three of moderate limitations

in concentration, persistence, or pace, those limitations must be reflected in the RFC assessment.

*Saucedo v. Colvin*, 2014 WL 4631225, at *17-18 (D. Or. Sept. 15, 2014); *see also Lubin v.*

*Comm'r Soc. Sec. Admin.*, 507 F. App'x 709, 712 (9th Cir. 2013) ("The ALJ must include all

restrictions in the [RFC] determination . . . including moderate limitations in concentration, persistence, or pace."). Because the ALJ found "moderate difficulties" with concentration, persistence, or pace but failed to address that finding in his RFC analysis, the ALJ erred. Consequently, the ALJ's hypotheticals did not adequately encompass all of Ms. Strutz's limitations, and therefore were not based on substantial evidence. As such, the ALJ's RFC, the hypothetical questions to the VE based upon the faulty RFC, and the ALJ's findings based upon the VE's responses, are of no evidentiary value. These errors require reversal.

**E.  Remand**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001) (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Id.* at 1100. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act. *Strauss v. Comm'r, Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). In that case, the Ninth Circuit held that it had

> devised a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Id.* at 1020.

Ordinarily, if all three of these elements are satisfied, a district court must remand for a calculation of benefits. *Id.* If, however, "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled," the district court retains the "flexibility" to remand for further proceedings even when these elements are satisfied. *Id.* at 1021; *see also Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (remanding for further proceedings without analyzing whether the three factors are met "because, even assuming that they are, we conclude that the record as a whole creates serious doubt as to whether Claimant is, in fact, disabled"). Moreover, when remanding for further development of the record, the district court has the discretion to remand on an open record or with the directive that the claimant's testimony be credited as true. *See Burrell*, 775 F.3d at 1141 (observing that a court's "flexibility" includes the option to "remand on an open record for further proceedings") (citing *Garrison*, 759 F.3d at 1021).

Based on the errors discussed herein, this case must be remanded for further proceedings. The ALJ erroneously failed to provide a germane reason not to credit the testimony of lay witness Ms. Swanson, and failed to include all of Ms. Strutz's impairments in the RFC formulation and hypothetical questions to the VE, rendering the ALJ's identification of suitable jobs in the economy of no evidentiary value. AR 51-52. As such, the record has not been fully developed.

PAGE 25 – OPINION AND ORDER

Although the Court recognizes that Ms. Struz's current application for benefits has been before two ALJs and also has been to the Appeals Council twice, awarding benefits is not appropriate unless a claimant actually establishes disability under the Act. *Burrell*, 775 F.3d at 1141-42. Based on the foregoing, complex issues remain unresolved, precluding an immediate disability determination. Therefore, the proper course is to remand this case for further proceedings consistent with this opinion

## CONCLUSION

The Commissioner's decision that Ms. Strutz is not disabled is not based on substantial evidence; Ms. Strutz's request for remand (Dkt. 1) is GRANTED, the Commissioner's decision is REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 10th day of August, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge